**SEALED**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-20648-CR-WILLIAMS

18 U.S.C. § 371
22 U.S.C. § 2778(b)(2)
22 U.S.C. § 2778(c)
18 U.S.C. § 2

MAGISTRATE JUDGE
SIMONTON

UNITED STATES OF AMERICA

vs.

ALVARO RODRIGUEZ and
MAURICIO CAMACHO LOEB,

        Defendants.
_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Indictment:

### The Defendants

1.    **ALVARO RODRIGUEZ** ("RODRIGUEZ") was engaged in the business of buying and selling aircraft parts from an office located in Hialeah Gardens, Florida.

2.    **MAURICIO CAMACHO LOEB** ("CAMACHO") was the owner of Mercaereo SA, a freight forwarding company based in Colombia that imported military and police supplies.

### The Co-Conspirators

3.    Alberto Pichardo ("Pichardo") was an officer of the Venezuelan Air Force responsible for the oversight and control of the Venezuelan Military Acquisitions Office located in Doral, Florida, who met with **RODRIGUEZ** and his business partner to procure defense articles for the Venezuelan Air Force.

4. Victor Brown ("Brown") was the business partner of **RODRIGUEZ** and was engaged in buying and selling aircraft parts from their office located in Hialeah Gardens, Florida, including defense articles supplied to the Venezuelan Air Force.

5. Kirk Drellich ("Drellich") was the owner and president of SkyHigh Accessories, Inc. (SkyHigh Accessories"), a company located in Davie, Florida, engaged in buying and selling aircraft parts, including defense articles ordered through **RODRIGUEZ** and supplied to the Venezuelan Air Force. Drellich would also process payments for items supplied to the Venezuelan Air Force, as directed by **RODRIGUEZ** and Brown.

6. GECI Espanola Levante SA ("GECI") was a Spanish company that would place orders for defense articles with **RODRIGUEZ** and Brown on behalf of the Venezuelan Air Force and then pay for those articles through a front company.

## The Arms Export Control Act

7. The Arms Export Control Act and its attendant regulations, the International Traffic in Arms Regulations, require a person to apply for and obtain an export license or other written approval from the Directorate of Defense Trade Controls of the United States Department of State before exporting from the United States any defense article designated on the United States Munitions List.

## COUNT 1
## Conspiracy to Violate the Arms Export Control Act
## (18 U.S.C. § 371)

1. The "General Allegations" portion of this Indictment is re-alleged and re-incorporated by reference as if fully set forth herein.

2. From at least as early as February 11, 2009, through on or about August 4, 2010, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**ALVARO RODRIGUEZ**
and
**MAURICIO CAMACHO LOEB,**

did knowingly and willfully combine, conspire, confederate, and agree with persons known and unknown to the Grand Jury, including Pichardo, Brown, and Drellich, to commit an offense against the United States, that is, to export and cause to be exported, from the United States to a place outside thereof, defense articles designated on the United States Munitions List, without first obtaining the required license or written approval from the Directorate of Defense Trade Controls of the United States Department of State, in violation of Title 22, United States Code, Section 2778(b)(2), and Title 22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1.

## OBJECT OF THE CONSPIRACY

3. It was the object of the conspiracy that **RODRIGUEZ**, **CAMACHO**, and their co-conspirators would enrich themselves by unlawfully exporting defense articles from the United States to Venezuela and then perpetuate and conceal the existence of the conspiracy.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which **RODRIGUEZ**, **CAMACHO**, and their co-conspirators sought to accomplish the object of the conspiracy included, among others, the following:

4. Co-conspirators residing in the United States, Venezuela, and Spain would and did advise **RODRIGUEZ**, who was then residing in the United States, of specific defense articles that the Venezuelan Air Force wanted to purchase.

5. Co-conspirators, including **RODRIGUEZ**, would and did meet with officials of the Venezuelan Air Force regarding defense articles that the Venezuelan Air Force wanted to purchase.

6. Co-conspirators, including **RODRIGUEZ**, Pichardo, and Brown, would and did

3

purchase and obtain defense articles from various suppliers, including co-conspirator Drellich of SkyHigh Accessories.

7. Co-conspirators, including **RODRIGUEZ** and **CAMACHO**, would and did ship defense articles to Venezuela without the required license or other written approval from the Directorate of Defense Trade Controls.

8. Co-conspirators, including **RODRIGUEZ** and **CAMACHO**, would and did receive payment from various individuals outside the United States for their actions in obtaining defense articles for Venezuela.

9. Co-conspirators, including **RODRIGUEZ**, would and did break up payments into small amounts for defense articles and shipping costs associated with the Venezuelan orders, so as not to attract the attention of law enforcement.

## OVERT ACTS

In furtherance of this conspiracy, and to accomplish its object, at least one of the co-conspirators committed or caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

10. On or about February 11, 2009, **RODRIGUEZ** and Brown traveled from Miami, Florida, to Madrid, Spain, to meet with GECI about selling defense articles to Venezuela.

11. On or about April 22, 2009, GECI sent an email to **RODRIGUEZ** advising that it wanted to order 50 military helicopter flight helmets, F-16 fighter jet parts, and other defense articles for Venezuela.

12. On May 15, 2009, **RODRIGUEZ**, Brown, and others met in Hialeah Gardens, Florida, to discuss GECI's interest in obtaining military helicopter flight helmets, C-130 military transport aircraft parts, and F-16 fighter jet parts for Venezuela and how to avoid United States

4

export control restrictions.

13. On or about August 27, 2009, GECI sent a purchase order for 50 military helicopter flight helmets.

14. On or about September 14, 2009, **RODRIGUEZ** and Brown received from Drellich certain defense articles for C-130 military transport aircraft, that is, an Actuator, Geneva Lock (Part Number 100930-1); a Contractor/High Power Relay (Part Number B123J or 1616523-7); a Valve, Shutoff (Part Number 106388-1-2); and a Valve, Shut-off, Hydraulic, Solenoid Operated (Part Number 9A022-1), which they then caused to be shipped from the United States to Venezuela.

15. On or about September 17, 2009, **RODRIGUEZ** and Brown caused Drellich to issue a check in the amount of $2,950.00 to **CAMACHO**.

16. On or about September 24, 2009, **RODRIGUEZ** and Brown caused Drellich to issue a check in the amount of $1,800.00 to **CAMACHO**.

17. On or about September 25, 2009, **RODRIGUEZ** and Brown caused to be issued a wire transfer in the amount of $60,691.52 as payment for the purchase of military helicopter flight helmets.

18. On or about October 5, 2009, **RODRIGUEZ** and Brown caused Drellich to issue a check in the amount of $500.00 to **CAMACHO**.

19. On or about October 13, 2009, **RODRIGUEZ** and Brown received from Drellich a defense article for C-130 military transport aircraft, that is, a Pressure Switch (Part Number H-E 40088), which they then caused to be shipped from the United States to Venezuela.

20. On or about October 16, 2009, **RODRIGUEZ** and Brown caused Drellich to issue a check in the amount of $2,450.00 to **CAMACHO**.

21. On or about October 30, 2009, **RODRIGUEZ** and Brown caused Drellich to issue a check in the amount of $4,500.00 to **CAMACHO**.

22. On or about November 3, 2009, **RODRIGUEZ** and Brown caused a wire transfer in the amount of $177,500.00 to be sent to Drellich at SkyHigh Accessories.

23. On or about November 10, 2009, **RODRIGUEZ** and Brown received from Drellich defense articles for C-130 military transport aircraft, that is, two Turbines, Cooling (Part Number 571925-3-1), which they then caused to be shipped from the United States to Venezuela.

24. On or about November 16, 2009, **RODRIGUEZ** and Brown caused a check in the amount of $5,707.20 to be issued to Drellich.

25. On or about November 16, 2009, **RODRIGUEZ** and Brown caused Drellich to issue a check in the amount of $2,800.00 to **CAMACHO** for "pads."

26. On or about November 20, 2009, **RODRIGUEZ** and Brown caused Drellich to issue a check in the amount of $1,950.00 to **CAMACHO**.

27. On or about November 25, 2009, **RODRIGUEZ** and Brown caused a check in the amount of $50,040.00 to be issued to Drellich for "disks."

28. On or about November 27, 2009, **RODRIGUEZ** and Brown caused Drellich to issue a check in the amount of $3,600.00 to **CAMACHO**.

29. On or about November 30, 2009, **RODRIGUEZ** and Brown caused a wire transfer in the amount of $37,000.00 to be sent to Drellich at SkyHigh Accessories.

30. On or about December 1, 2009, **RODRIGUEZ** and Brown received from Drellich defense articles for C-130 military transport aircraft, that is, an Actuator Rotary Trim Tab Assembly (Part Number A489-5) and a Pump, Centrifugal, Fuel Booster (Part Number RR54860), which they then caused to be shipped from the United States to Venezuela.

31.     On or about December 3, 2009, **RODRIGUEZ** and Brown received from Drellich a defense article for C-130 military transport aircraft, that is, a Rotating Disk (Part Number 313010), which they then caused to be shipped from the United States to Venezuela.

32.     On or about December 3, 2009, **RODRIGUEZ** and Brown caused a check in the amount of $1,400.00 to be issued to Drellich for "freight-disks."

33.     On or about December 7, 2009, **RODRIGUEZ** and Brown caused a check in the amount of $17,500.00 to be issued to Drellich.

34.     On or about December 7, 2009, **RODRIGUEZ** and Brown caused a check in the amount of $7,000.00 to be issued to **CAMACHO** for "freight."

35.     On or about December 7, 2009, **RODRIGUEZ** and Brown caused Drellich to issue a check in the amount of $3,000.00 to **CAMACHO**.

36.     On or about December 17, 2009, **RODRIGUEZ** and Brown caused Drellich to issue a check in the amount of $2,000.00 to **CAMACHO**.

37.     On or about December 18, 2009, **RODRIGUEZ** and Brown caused a wire transfer in the amount of $27,000.00 to be sent to **CAMACHO** at Mercaereo SA.

38.     On or about December 28, 2009, **RODRIGUEZ** and Brown caused to be shipped defense articles for use with military helicopters, that is, thirty-five HGU-84/P Rotary Wing Helmets (Medium), ten HGU-84/P Rotary Wing Helmets (Large), and five HGU-84/P Rotary Wing Helmets (X-Large), from the United States to Venezuela.

39.     On or about December 28, 2009, **RODRIGUEZ** and Brown caused Drellich to issue a check in the amount of $2,000.00 to **CAMACHO**.

40.     On or about December 29, 2009, **RODRIGUEZ** and Brown caused a wire transfer in the amount of $49,000.00 to be sent to Drellich at SkyHigh Accessories.

7

41. On or about January 2, 2010, **CAMACHO** submitted an invoice in the amount of $5,940.00 to **RODRIGUEZ** for freight costs.

42. On or about January 6, 2010, **RODRIGUEZ** and Brown caused a wire transfer in the amount of $5,940.00 to be sent to **CAMACHO** at Mercaereo SA.

43. On or about January 22, 2010, **RODRIGUEZ** and Brown caused Drellich to issue a check in the amount of $1,950.00 to **CAMACHO**.

44. On or about January 27, 2010, **RODRIGUEZ** and Brown caused a wire transfer in the amount of $10,000.00 to be sent to Drellich at SkyHigh Accessories.

45. On or about January 27, 2010, **RODRIGUEZ** and Brown caused a check in the amount of $2,754.54 to be issued to Drellich.

46. On or about January 29, 2010, **RODRIGUEZ** and Brown caused Drellich to issue a check in the amount of $1,950.00 to **CAMACHO**.

47. On or about February 4, 2010, **RODRIGUEZ** and Brown caused Drellich to issue a check in the amount of $700.00 to **CAMACHO**.

48. On or about February 4, 2010, **RODRIGUEZ** and Brown caused Drellich to issue a check in the amount of $2,750.00 to **CAMACHO**.

49. On or about February 10, 2010, **RODRIGUEZ** and Brown caused a wire transfer in the amount of $53,480.00 to be sent to **CAMACHO** at Mercaereo SA.

50. On or about February 10, 2010, **RODRIGUEZ** and Brown caused a wire transfer in the amount of $37,000.00 to be sent to Drellich at SkyHigh Accessories.

51. On or about February 24, 2010, **RODRIGUEZ** and Brown caused Drellich to issue a check in the amount of $2,850.00 to **CAMACHO**.

52. On or about February 25, 2010, **RODRIGUEZ** and Brown caused Drellich to issue

a check in the amount of $1,950.00 to **CAMACHO**.

53. On or about March 2, 2010, **RODRIGUEZ** and Brown caused a check in the amount of $3,500.00 to be issued to **CAMACHO**.

54. On or about March 4, 2010, **RODRIGUEZ** and Brown caused Drellich to issue a check in the amount of $3,400.00 to **CAMACHO**.

55. On or about March 11, 2010, **RODRIGUEZ** and Brown caused Drellich to issue a check in the amount of $1,980.00 to **CAMACHO**.

56. On or about March 19, 2010, **RODRIGUEZ** and Brown caused Drellich to issue a check in the amount of $9,500.00 to **CAMACHO**.

57. On or about March 23, 2010, **RODRIGUEZ** and Brown caused Drellich to issue a check in the amount of $5,000.00 to **CAMACHO**.

58. On or about March 30, 2010, **RODRIGUEZ** and Brown caused Drellich to issue a check in the amount of $1,950.00 to **CAMACHO.**

59. On or about April 23, 2010, **RODRIGUEZ** and Brown caused a wire transfer in the amount of $118,500.00 to be sent to Drellich at SkyHigh Accessories.

60. On or about May 3, 2010, **RODRIGUEZ** and Brown received from Drellich defense articles for C-130 military transport aircraft, that is, a Pressure Switch (Part Number H-E 40088), a Butterfly Valve and Actuator Assembly 3.00 DIA Stainless Steel (Part Number BYLB-51045), and a Pump Assembly, Fuel Booster (Part Number 60-369A), which they then caused to be shipped from the United States to Venezuela.

61. On or about May 21, 2010, **RODRIGUEZ** and Brown caused Drellich to issue a check in the amount of $4,000.00 to **CAMACHO**.

62. On or about May 28, 2010, **RODRIGUEZ** and Brown caused Drellich to issue a

check in the amount of $2,000.00 to **CAMACHO**.

63. On or about June 2, 2010, **RODRIGUEZ** and Brown caused a check in the amount of $63,700.00 to be issued to Drellich.

64. On or about June 15, 2010, **RODRIGUEZ** and Brown caused Drellich to issue a check in the amount of $2,000.00 to **CAMACHO**.

65. On or about June 29, 2010, **RODRIGUEZ** and Brown caused Drellich to issue a check in the amount of $1,700.00 to **CAMACHO**.

66. On or about July 6, 2010, **RODRIGUEZ** and Brown caused Drellich to issue a check in the amount of $2,000.00 to **CAMACHO**.

67. On or about July 8, 2010, **RODRIGUEZ** and Brown caused a check in the amount of $54,675.00 to be issued to Drellich.

68. On or about July 9, 2010, **RODRIGUEZ** and Brown caused Drellich to issue a check in the amount of $3,000.00 to **CAMACHO**.

69. On or about July 12, 2010, **RODRIGUEZ** and Brown received from Drellich defense articles for C-130 military transport aircraft, that is, three 25 Liter Liquid Oxygen Converters (Part Number 10C-0001-26), which they then caused to be shipped from the United States to Venezuela.

70. On or about July 13, 2010, **RODRIGUEZ** and Brown caused a check in the amount of $9,000.00 to be issued to Drellich.

71. On or about July 15, 2010, **RODRIGUEZ** and Brown caused a check in the amount of $12,000.00 to be issued to Drellich.

72. On or about July 19, 2010, **RODRIGUEZ** and Brown caused Drellich to send a wire transfer in the amount of $4,000.00 to **CAMACHO**.

73. On or about August 3, 2010, **RODRIGUEZ** and Brown caused a check in the amount of $49,500.00 to be issued to Drellich.

All in violation of Title 18, United States Code, Section 371.

### COUNTS 2-8
### Violation of the Arms Export Control Act
### (22 U.S.C. § 2778)

1. The "General Allegations" portion of this Indictment is re-alleged and re-incorporated by reference as if fully set forth herein.

2. On or about the dates listed as to each count set forth herein, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**ALVARO RODRIGUEZ,**

did knowingly and willfully export, from the United States to the Bolivarian Republic of Venezuela, defense articles, under Category VIII(h) of the United States Munitions List, that is,

| Count | Date | Defense Article | Part Number | Quantity |
|---|---|---|---|---|
| 2 | 09/14/09 | Actuator, Geneva Lock | 1009350-1 | 1 |
|  |  | Contractor/High Power Relay | B123J or 1616523-7 | 1 |
|  |  | Valve, Shutoff | 106388-1-2 | 1 |
|  |  | Valve, Shut-off, Hydraulic, Solenoid Operated | 9A022-1 | 1 |
| 3 | 10/13/09 | Pressure Switch | H-E 40088 | 1 |
| 4 | 11/10/09 | Turbine, Cooling | 571925-3-1 | 2 |
| 5 | 12/01/09 | Actuator Rotary Elevator Trim Tab Assembly | A489-5 | 1 |

11

| Count | Date | Defense Article | Part Number | Quantity |
|---|---|---|---|---|
|  |  | Pump, Centrifugal, Fuel Booster | RR54860 | 1 |
| 6 | 12/03/09 | Rotating Disk | 313010 | 1 |
| 7 | 05/03/10 | Pressure Switch | H-E 40088 | 1 |
|  |  | Butterfly Valve and Actuator Assembly 3.00 DIA Stainless Steel | BYLB-51045 | 1 |
|  |  | Pump Assembly, Fuel Booster | 60-369A | 1 |
| 8 | 07/12/10 | 25 Liter Liquid Oxygen Converter | 10C-0001-26 | 3 |

without having first obtained the required license or written approval from the Directorate of Defense Trade Controls of the United States Department of State, in violation of Title 22, United States Code, Sections 2778(b)(2) and (c); Title 22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1; and Title 18, United States Code, Section 2.

## COUNT 9
### Violation of the Arms Export Control Act
### (22 U.S.C. § 2778)

1.  The "General Allegations" portion of this Indictment is re-alleged and re-incorporated by reference as if fully set forth herein.

2.  On or about the date listed, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**ALVARO RODRIGUEZ,**

did knowingly and willfully export, from the United States to the Bolivarian Republic of Venezuela, defense articles, under Category X(a)(6) of the United States Munitions List, that is,

| Count | Date | Defense Article | Part Number | Quantity |
|---|---|---|---|---|
| 9 | 12/28/09 | HGU-84/P Rotary Wing Helmet (Medium) | D7748-1 | 35 |
| | | HGU-84/P Rotary Wing Helmet (Large) | D7748-2 | 10 |
| | | HGU-84/P Rotary Wing Helmet (X-Large) | D7748-3 | 5 |

without having first obtained the required license or written approval from the Directorate of Defense Trade Controls of the United States Department of State, in violation of Title 22, United States Code, Section 2778(b)(2) and (c); Title 22, Code of Federal Regulations, Sections 121.1, and 127.1; and Title 18, United States Code, Section 2.

A TRUE BILL

_____
FOREPERSON

*[signature]*, chief, CR-DIV
WIFREDO A. FERRER
UNITED STATES ATTORNEY

*[signature]*
MICHAEL WALLEISA
ASSISTANT UNITED STATES ATTORNEY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: ALVARO RODRIGUEZ

**Case No**: _____

Count: 1

Conspiracy to Violate Arms Export Control Act

Title 18, United States Code, Section 371

\* **Max. Penalty:** 5 years' Imprisonment

Counts: 2-8

Violation of Arms Export Control Act

Title 22, United States Code, Section 2778

\***Max. Penalty:**   20 years' Imprisonment

Count: 9

Violation of Arms Export Control Act

Title 22, United States Code, Section 2778

\***Max. Penalty:** 20 years' Imprisonment

Count:

_____

_____

\***Max. Penalty:**

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: MAURICIO CAMACHO LOEB

**Case No**: _____

Count: 1

Conspiracy to Violate Arms Export Control Act

Title 18, United States Code, Section 371

**\* Max. Penalty:** 5 years' Imprisonment

Count: 2

\***Max. Penalty:**

Count:

\***Max. Penalty:**

Count:

\***Max. Penalty:**

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

**ALVARO RODRIGUEZ and
MAURICIO CAMACHO LOEB,**
Defendants.
_____/

CASE NO. _____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division**: (Select One)

__X__ Miami  ____ Key West
____ FTL    ____ WPB    ____ FTP

New Defendant(s)    Yes ____ No ____
Number of New Defendants ____
Total number of counts ____

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No) __No__
   List language and/or dialect _____

4. This case will take __10__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   
   I    0 to 5 days      ____
   II   6 to 10 days     __X__
   III  11 to 20 days    ____
   IV   21 to 60 days    ____
   V    61 days and over ____

   (Check only one)
   
   Petty    ____
   Minor    ____
   Misdem.  ____
   Felony   __X__

6. Has this case been previously filed in this District Court? (Yes or No) __No__
   If yes:
   Judge: _____  Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No) __No__
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____ District of _____

   Is this a potential death penalty case? (Yes or No) __No__

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? ____ Yes __X__ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? ____ Yes __X__ No

_____
MICHAEL WALLEISA
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 539570

*Penalty Sheet(s) attached

REV 4/8/08